Charles Gold, J.
In this holdover summary proceeding respondent is charged with violation of a substantial obligation of his lease, to wit: harboring a dog in his apartment contrary to the provisions (prohibition) in his lease. The apartment *1096 building is part of a new nonprofit complex in the East Harlem area. When fully completed the current project will house approximately 120 families. Two local groups sponsored this project to demonstrate the feasibility of creating considerable additional sorely needed housing by rehabilitating old buildings in depressed urban areas.
All of the tenants are recipients of various types of public assistance. Respondent receives a subsidy of one half of his rent under the Federal rent supplement program; and the lease herein, containing the prohibition, was one required by FHA to be signed by all rent supplement tenants. The project was constructed under the auspices of the Federal and city Governments and is fully subsidized by the Federal Government. It is managed by a community owned corporation. The builder/ owner is a subsidiary of a large publicly owned corporation. It will make no profit and will shortly convey title to a community owned nonprofit corporation at cost to be paid by the Federal Government.
The Chambers Memorial Baptist Church (which will control the new corporate landlord) and the Community Association of the East Harlem Triangle, Inc., proposed and sponsored this housing program and promulgated the rules and regulations governing all tenancies. These rules and regulations were patterned after mandatory Federal rules and regulations.
There is an urgent need for new housing in the immediate community and the presently developing programs of the sponsors will, if all goes well, provide new housing for 2,000 families in this area.
All prospective tenants were required to attend tenant orientation meetings before leases were tendered to them. Respondent admittedly attended one of these at which the prohibition against animals was extensively discussed. Respondent offered no objection to this prohibition and thereupon was offered the lease and regulations for signature.
Paragraph 15 (g) of the lease states that tenant agrees “ to have no animals or pets of any kind on the premises, other than those expressly permitted in writing by the Landlord.” Paragraph 17 of the rules and regulations, which was separately signed by respondent provides that 1 ‘ no dogs * * * shall be kept or harbored in the premises.”
Respondent admitted knowing these prohibitions were in the lease and rules when he signed them. He also admits harboring a dog, which he has owned for 5 years, despite the aforesaid provision. The testimony of respondent and his wife as to when they first brought the dog onto the premises and the rea *1097 sons therefor were conflicting and fell far short of convincing the court that the respondent did in fact intend, at any time, to comply with the lease and rules.
Last May and again in June (this time in writing) the managing agent demanded the dog be removed. Tenant repeatedly promised to do so, and may have done so, briefly. However, if in fact the dog was ever removed, it was soon back on the premises and remains there.
Though respondent contends otherwise, the court finds that there are no other dogs in the building and that those which were once there have been removed upon the management’s timely demands.
Respondent claims his dog is not a nuisance and that it does not impair the cleanliness of the building. Landlord does not contradict this.
Petitioner acknowledges that there have been two burglaries and some minor acts of vandalism in the building. From the outset petitioner has endeavored to deal with these problems and is now broadening its efforts to provide safeguards and security for its tenants.
The court also finds that petitioner regularly inspects the functioning and effectiveness of the devices being employed for these purposes.
There is just the merest suggestion that respondent’s dog'— a poodle — is retained by respondent as a security measure. The court finds there is no basis for so concluding. The court is of the opinion that the sole reason for the respondent’s violation of his commitments is the family’s strong attachment to the dog. The court fully understands and appreciates this sentiment. However, it may not indulge and excuse respondent’s violation of his contractual obligations upon any such ground especially in view of the special circumstances here present.
The landlord and management considered the prohibition of great importance, as did FHA. This was made entirely clear to respondent by the emphasis given to it in the lectures to prospective tenants which preceded the offering of leases to tenants and by its inclusion in both the lease and the rules.
The court finds the respondent to be an intelligent, articulate person and entertains not the slightest doubt that he fully understood the significance attached by the Government and the landlord to the provisions in question and the reasons therefor.
The problem of providing low-cost housing for disadvantaged people is fully discussed in the Report of the National Advisory Commission on Civil Disorders (Kerner Comm. Report) (ch. 17, subch. IV): “ decent housing remains a chronic problem for *1098 the disadvantaged urban household.” For those families living ‘1 in the decaying slums of our central cities, the goal of a decent home and suitable environment is as far distant as ever. ’ ’
Petitioner contends that the rules adopted by the sponsors are fair and reasonable and if observed would promote the health, welfare, safety and convenience of the tenants. The court concludes that the provisions before it are reasonable and do serve to assure the cleanliness and safety of the building. Moreover, these provisions are especially important and helpful in ghetto communities as it is commonly recognized that housing in such areas is subject to rapid waste, depreciation and decay. Further, they also serve to minimize maintenance costs so essential to nonprofit housing.
It is difficult to see how the court can indulge respondent’s wish to keep his dog without encouraging other tenants to do likewise. An added consequence would be the undermining of management’s every effort to pursue its high standards in the operation of this property.
In short, the court concludes that the provisions constitute a substantial obligation of the tenancy and the parties, by their acts and conduct, signified their appreciation of this fact. Respondent has violated this substantial obligation of his lease.
Petitioner has laid great stress upon the fact that this is a demonstration project. The court infers that petitioner is suggesting that the project’s success will assure completion of the total program (2,000 apartments) and will encourage similar programs. This is much to be desired. However the court may / not and did not consider such matters in making its determination.
Respondent relies heavily on Mutual Redevelopment Houses v. Hanft (42 Misc 2d 1044, 1048) in which the court stated: “ The mere harboring of a dog in violation of the terms of the lease is not per se a basis for terminating the lease and evicting the tenant without a showing that the dog is a nuisance to the landlord or other tenants because of repeated acts which interfere with their enjoyment and use of the property.”
The facts in Mutual are clearly and in all respects distinguishable from those presented to this court.
In Mutual the tenant purchased, in 1959, a co-operative apartment and was given no intimation, suggestion or statement, written or oral, regarding the prohibition against dogs. In the three-year period ensuing the building was completed. During this period the tenant paid the balance of the purchase price without ever being advised of the prohibition. One month before the tenant was to occupy (in October, 1962) he was tendered a *1099 lease and in the letter of transmittal was advised, for the first time, of the leasehold restrictions, one of which related to dogs. The court found the tenant’s economic condition and other factors made it impracticable for the tenant to do other than to sign the lease and go forward. The court also found that the landlord was advised by letter of the dog’s presence and nevertheless continued to collect rent for many months.
Not one of the facts helpful to the tenant in Mutual is present in the instant case. Conversely, petitioner herein has presented substantial, cogent and persuasive facts in support of its petition as distinguished from the landlord’s showing in Mutual.
East Riv. Housing Corp. v. Matonis (62 Misc 2d 588) held that under the facts presented tenant had not violated a substantial obligation of the tenancy. Tenant proved seven burglaries in seven months, an assault, an attempted burglary, the undisturbed keeping of dogs and cats by other tenants and the protective nature of a Schnauzer. The court stated (p. 590) : ‘ ‘ In the final analysis, however, what is a reasonable approach to a problem and a reasonable regulation must of necessity vary from time to time and place to place. ’ ’
The facts, conditions, and circumstances in the instant case are different in all respects from those in East Riv. and the court for the reasons shown deems the instant provisions to be reasonable. The court herein finds the owner’s, sponsor’s and management’s approach a sound and reasonable one in dealing with a substantial and serious problem.
In Gouverneur Gardens Housing Corp. v. Clayton (N. Y. L. J., Jan. 19, 1970, p. 14, col. 1) the landlord’s motion for a temporary injunction restraining the tenant from keeping a dog in violation of the occupancy agreement was granted. The court found that the provision in question was reasonable and necessary, was uniformly enforced and that every tenant was required to sign the same pet agreement. Though similar to the facts in Gouverneur, those presented in the instant case are considerably more persuasive.
In Knolls Co-op. Section No. II v. Cashman (N. Y. L. J., March 5,1963, p. 17, col. 3, affd. 19 A D 2d 789, affd. 14 N Y 2d 579) the court at Special Term deciding a motion seeking a declaratory judgment held that a regulation prohibiting animals on the premises was “reasonable and in the interest of cleanliness and safety ’ ’.
This court recognizes the holdings in Jerome Realty Co. v. Yankovich (35 Misc 2d 183), Parkside Development Co. v. McGee (21 Misc 2d 277), Hardav Realty Corp. v. Donahue (8 Misc 2d 951) and Smith Real Estate v. Byrne (3 Misc 2d 559). *1100 However, it is the court’s opinion that the principle (substantially the same as that in Mutual, supra) enunciated in these cases does not apply to the instant case which has a special and unique factual basis, including the dignity given by the parties to the prohibition prior to the signing of the lease and rules, both of which contain the injunction.
The court finds no merit whatsoever in respondent’s contention that petitioner waived its rights by accepting rent from respondent. It is noted that no rent was accepted for the period subsequent to January 1, 1970. (See Amalgamated Housing Corp. v. Luxenberg, 8 Misc 2d 831 and the eases cited thereunder.)
Petitioner is entitled to a final judgment of possession. Issuance of warrant stayed 30 days after service of a copy of the judgment and this opinion on the attorney for respondent with notice of entry. In the event the respondent establishes, by affidavit, that he has permanently removed the dog within the 30-day period, final judgment for respondent dismissing the petition on the merits.